Filed 10/21/24 (see dissenting opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JUAN ALAZAR,<br><br>  Defendant and Appellant. | 2d Crim. No. B331710<br>(Super. Ct. No. PA062836)<br>(Los Angeles County) |

Before a defendant pleads guilty or no contest to a charged offense, the trial court must "satisfy itself . . . that there is a factual basis for the plea." (Pen. Code,[1] § 1192.5, subd. (c).) This "inquiry may be satisfied by stipulation of [the] parties" that the required factual basis exists. (*In re Alvernaz* (1992) 2 Cal.4th 924, 940, fn. 9 (*Alvernaz*); see *People v. West* (1970) 3 Cal.3d 595, 603-614 (*West*).) Such a stipulation does not require the defendant to admit the factual basis for the plea (*Alvernaz*, at p. 932), but rather permits them to take advantage of a plea bargain while maintaining their claim of innocence (*id.*, at p. 940, fn. 9; see also *People v. Rauen* (2011) 201 Cal.App.4th 421, 424 (*Rauen*)). Here, we hold that a defendant who enters a so-called

---

[1] Statutory references are to the Penal Code.

*West* plea and stipulates that the preliminary hearing transcript contains a factual basis for that plea is not barred, as a matter of law, from resentencing pursuant to section 1172.6.

Juan Alazar appeals from the trial court's order denying his petition for resentencing. He contends the court engaged in improper judicial factfinding when it denied his petition at the prima facie stage. We agree. Because Alazar is entitled to have a factfinder conclude, beyond a reasonable doubt, that he was the sole shooter and possessed the intent to kill, we reverse.

## FACTUAL AND PROCEDURAL HISTORY
### *Background*

In 2008, prosecutors charged Alazar with attempted murder (§§ 664/187, subd. (a)), assault with a firearm (§ 245, subd. (a)(2)), and possession of a firearm by a felon (former § 12021, subd. (a)(1)). They also alleged that the attempted murder was committed willfully, deliberately, and with premeditation (§ 664, subd. (a)); that Alazar personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), personally and intentionally discharged a firearm (*id.*, subd. (c)), and personally used a firearm (*id.*, subd. (b)) when he committed attempted murder; and that he personally used a firearm (§ 12022.5) when committing assault with a firearm. No codefendants were charged alongside Alazar in the complaint.

At a preliminary hearing, Sandra Padilla testified that Alazar rented a room in her residence in April 2008. She asked him to move out two weeks later due to his drug use, smoking, and excessive noise. Alazar did so and apologized for any problems he had caused.

Alazar returned to Padilla's house the next month and asked to speak to her husband. Padilla said he was not home.

2

Padilla's new tenant, Rutilio Navarro Hernandez, then arrived in a black pickup truck. Padilla's husband also drove a black pickup.

Alazar walked toward Hernandez's truck, pulled out a gun, and shot once at the driver's side. He then fired three more shots into the driver's side window. One of the bullets hit Hernandez's right arm. Both he and Padilla identified Alazar as the shooter.

The magistrate did not make explicit factual findings or credibility determinations at the conclusion of the preliminary hearing. In his holding order, the magistrate found "sufficient cause to believe" Alazar had committed the offenses and allegations charged in the complaint.

Prosecutors filed an information that included those same charges and allegations. At a pretrial proceeding, the trial court advised Alazar that he faced the possibility of serving two life terms if convicted: "This case carries with it two life allegations, life in prison allegations. One for premeditated attempted murder, and one for any crime with the use of a gun causing great bodily injury." The court said that Alazar could avoid a life sentence if he accepted prosecutors' "take-it-or-leave-it" offer. After consulting with counsel, Alazar did so, pleading no contest to attempted murder and admitting that he personally and intentionally discharged a firearm in exchange for a 29-year state prison sentence and dismissal of the remaining charges and allegations.[2] Alazar did not admit a factual basis for his plea; instead, pursuant to *West*, *supra*, 3 Cal.3d 595, his counsel stipulated that the preliminary hearing transcript contained such a basis.

---

[2] The abstract of judgment erroneously shows that Alazar was convicted of willful, deliberate, and premeditated attempted murder.

3

*Section 1172.6 petition*

In 2022, Alazar petitioned for resentencing pursuant to section 1172.6. The petition alleged that the information allowed him to be prosecuted for attempted murder under the natural and probable consequences doctrine; that he was convicted of attempted murder after accepting a plea in lieu of a trial; and that he could not presently be convicted of attempted murder because of changes made to sections 188 and 189.

The trial court appointed counsel for Alazar and set the matter for a prima facie hearing. Prior to the hearing prosecutors filed an opposition arguing Alazar was ineligible for section 1172.6 relief because he was the sole perpetrator. Attached to their opposition were copies of the transcripts from Alazar's preliminary hearing and plea colloquy.

Alazar argued the trial court could not consider the preliminary hearing transcript at the prima facie stage since he did not stipulate to the truth of the facts contained therein when entering his plea. Prosecutors countered that the court could rely on the transcript to find that Alazar acted alone. The court agreed:

> "All of the testimony at the preliminary hearing would have been admissible at a trial.

> "So [a] pre-condition for this type of petition for resentencing on an attempted murder is that it must have been based on a natural and probable consequences theory.

> "In this case, there was one actor: [Alazar]. He [pleaded] to the attempted murder and [admitted the] personal use of a firearm. There was no other person involved from whom [Alazar] could have had malice

4

imputed to him, or any state of mind imputed to him."

The court therefore found "no prima facie evidence that [Alazar] is entitled to relief" and denied his resentencing petition.

DISCUSSION

Alazar contends the trial court engaged in improper judicial factfinding when it denied his section 1172.6 petition at the prima facie stage. We agree.

*Legal framework*

"Attempted murder requires the specific intent to kill." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) A direct perpetrator thus cannot be convicted of attempted murder on a natural and probable consequences theory. Historically, however, a defendant "could be convicted of attempted murder under the theory that [they] aided and abetted a crime where murder was a natural and probable consequence." (*People v. Estrada* (2024) 101 Cal.App.5th 328, 336 (*Estrada*).) This was because the direct perpetrator's " 'intent to kill' was imputed" to the aider and abettor if "attempted murder was a natural and probable consequence of [their] intent to participate in the target offense." (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007-1008.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish these goals, Senate Bill No. 1437 redefined "malice" in section 188, and narrowed the classes of persons liable for felony murder under section 189.

5

(Stats. 2018, ch. 1015, §§ 2-3.)  It also added what is now section 1172.6 to the Penal Code, which permits those convicted of felony murder or murder under a natural and probable consequences theory to petition to have their convictions vacated and be resentenced on any remaining counts.  (Stats. 2018, ch. 1015, § 4; see also Stats. 2022, ch. 58, § 10 [renumbering former § 1170.95 as § 1172.6 without substantive change].)  Senate Bill No. 775 (2021-2022 Reg. Sess.) subsequently extended this relief to persons convicted of attempted murder.  (See Stats. 2021, ch. 551, § 2.)

Pursuant to section 1172.6, a person may petition for resentencing if: (1) the information allowed prosecutors to "proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine," (2) the person was convicted of attempted murder, and (3) the person could not be convicted of attempted murder under the current versions of sections 188 and 189.  (§ 1172.6, subd. (a).)  If a person convicted of attempted murder files a facially valid petition, the trial court must appoint counsel, if requested, and set the matter for a prima facie hearing.  (*Id.*, subds. (b)(3) & (c).)  At that hearing the court may examine the record of conviction to determine if the person has made a prima facie showing that they are eligible for relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 970-971 (*Lewis*).)

The record of conviction " 'might not supply all [the] answers,' " however.  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  "At the prima facie stage, a court must accept as true a petitioner's allegation that [they] could not currently be convicted of a homicide offense . . . unless the allegation is refuted by the record."  (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).)  An "allegation is not refuted by the record unless the record conclusively establishes every element of the offense."  (*Ibid.*)

6

"In reviewing any part of the record of conviction at [the prima facie stage], a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Ibid*.) Therefore, a court may deny a petition *only* if a person is ineligible for section 1172.6 relief as a matter of law. (*Lewis*, at pp. 971-972.) We review such a denial de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

*Analysis*

Here, the trial court properly considered the record of conviction in making its prima facie determination that Alazar committed attempted murder. (See *People v. Reed* (1996) 13 Cal.4th 217, 223 [preliminary hearing transcript part of record of conviction]; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028 (*Fisher*) [plea colloquy part of record of conviction]; *People v. Washington* (2012) 210 Cal.App.4th 1042, 1045 [accusatory pleadings part of record of conviction].) But because the information generically charged Alazar with attempted murder, and because Alazar entered a *West* plea to that charge, the court erred when it concluded that Alazar is ineligible for section 1172.6 relief as a matter of law. This is because the record does not conclusively establish that Alazar harbored the intent to kill; that "intent could have been imputed to him under the natural and probable consequences doctrine." (*Estrada*, *supra*, 101 Cal.App.5th at p. 338; see also *People v. Williams* (2024) 103 Cal.App.5th 375, 388, review granted Sept. 11, 2024, S286314 (*Williams*).)

We disagree with the Attorney General's suggestion that the information conclusively establishes that Alazar acted as the sole perpetrator of Hernandez's attempted murder. "[A] charging

7

decision does not establish any facts as a matter of law." (*Estrada*, *supra*, 101 Cal.App.5th at p. 339.) And "we are aware of no authority requiring prosecutors to [charge or] try all codefendants together, so this single charging document does not foreclose the possibility of other people having been charged for related crimes." (*Ibid.*; cf. § 1098 ["where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial"].) That no codefendants were charged alongside Alazar thus does not "conclusively establish[]" that he acted alone. (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

Moreover, "[p]rior to the effective date of Senate Bill No. 1437, the natural and probable consequences doctrine was an available theory of both premeditated and unpremeditated attempted murder." (*Williams*, *supra*, 103 Cal.App.5th at p. 388, review granted.) And prosecutors were not "required to separately plead an aiding and abetting, felony murder, or natural and probable consequences theory." (*Ibid.*) The information here charged Alazar with attempted premeditated murder, with no theory of the case included. It thus cannot refute the assertion in Alazar's petition that malice was imputed to him based on a natural and probable consequences theory. (See *People v. Davenport* (2021) 71 Cal.App.5th 476, 484.)

The plea colloquy similarly does not undermine Alazar's assertion. In exchange for his plea, prosecutors dismissed the allegation that the attempted murder was willful, deliberate, and premeditated. Alazar thus did not necessarily admit that he acted with the intent required by the current version of section 188 when he pleaded. (Cf. *People v. Romero* (2022) 80 Cal.App.5th 145, 152 [defendant's admission that they acted willfully, deliberately, and with premeditation renders them

8

ineligible for § 1172.6 relief].)

Additionally, Alazar entered his plea pursuant to *West*, *supra*, 3 Cal.3d 595. That permitted him to accept a plea bargain and plead no contest to attempted murder "*while still asserting his . . . innocence.*" (*Rauen*, *supra*, 201 Cal.App.4th at p. 424, italics added.) And while his counsel stipulated that the preliminary hearing transcript contained a factual basis for the plea, Alazar did not admit the truth of any alleged facts in that transcript. (See *People v. Rivera* (2021) 62 Cal.App.5th 217, 235 (*Rivera*).) Whether Alazar acted alone with the intent to kill Hernandez would therefore require weighing the evidence presented at the preliminary hearing, something that is not permitted at the prima facie case stage. (*Lewis*, *supra*, 11 Cal.5th at p. 972; see also *People v. Lashley* (1991) 1 Cal.App.4th 938, 946 [whether a defendant harbored intent to kill is a factual issue].)

There is also a split of authority as to whether a court may even rely on the facts set forth in a preliminary hearing transcript to deny a section 1172.6 petition at the prima facie stage. (Compare *People v. Mares* (2024) 99 Cal.App.5th 1158, 1167-1175, review granted May 1, 2024, S284232 [upholding such reliance], *People v. Pickett* (2023) 93 Cal.App.5th 982, 989-990, review granted Oct. 11, 2023, S281643 [same], and *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670 [same] with *Williams*, *supra*, 103 Cal.App.5th at p. 389 [rejecting such reliance], review granted.) We believe *Williams* was correctly decided, and respectfully disagree with *Mares*, *Pickett*, and *Patton*.

As the *Williams* court noted, "[t]he primary purpose of a preliminary hearing is to establish whether there is *probable cause* to believe a defendant has committed a felony." (*Williams*, *supra*, 103 Cal.App.5th at p. 397, italics added, review granted.)

9

Probable cause requires a lower standard of proof than the proof-beyond-a-reasonable-doubt standard set forth in section 1172.6. (*Williams*, at p. 397.) Additionally, when making a probable cause finding the magistrate "may not reject the prosecution's evidence 'unless [it] is " 'inherently implausible, the witnesses [have been] conclusively impeached, or the demeanor of the witnesses [is] so poor that no reasonable person would find them credible.' " ' " (*Ibid.*) A preliminary hearing transcript thus cannot "conclusively establish a defendant's guilt" beyond a reasonable doubt, as required to deny a section 1172.6 resentencing petition. (*Williams*, at p. 398; see § 1172.6, subd. (d)(3).)

"[T]he prosecution's trial strategy is [also] not limited to the evidence presented at the preliminary hearing." (*Williams, supra*, 103 Cal.App.5th at p. 398, review granted.) "Rather, the prosecution may discover and proffer additional proof when the case proceeds to trial." (*Ibid.*) The preliminary hearing transcript therefore does not "conclusively establish . . . any particular theory of guilt." (*Ibid.*)

Here, as in *Williams*, the preliminary hearing transcript provides probable cause to believe that Alazar "committed attempted murder as the actual perpetrator of that offense." (*Williams, supra*, 103 Cal.App.5th at p. 398, review granted.) But it does not prove, beyond a reasonable doubt, that he did so as required by section 1172.6, subdivision (d)(3). Nor does it "conclusively establish" that he was convicted on a theory other than the natural and probable consequences doctrine. The transcript is therefore "insufficient to rebut [the] allegation [in Alazar's petition] that he could not presently be convicted of attempted murder 'because of changes to [s]ection 188 or 189.' " (*Williams*, at p. 398.)

10

*People v. Morales* (2024) 102 Cal.App.5th 1120, on which the Attorney General relies, is not to the contrary. The *Morales* petitioner sought resentencing after a jury trial. (*Id.* at p. 1124.) And during that trial prosecutors elicited a single factual basis for his attempted murder conviction: that he personally discharged a firearm causing great bodily injury. (*Id.* at pp. 1131-1132.) Here, no trial occurred. We can thus only speculate as to what theory of guilt prosecutors would have established to secure Alazar's attempted murder conviction.

Contrary to the Attorney General's assertion, that Alazar admitted that he personally and intentionally discharged a firearm does not establish beyond a reasonable doubt that he could be presently convicted of attempted murder at the prima facie stage. In exchange for his *West* plea, prosecutors jettisoned the allegation that Alazar personally and intentionally discharged a firearm resulting in great bodily injury or death, undermining any conclusive proof that he shot Hernandez. And the true finding on the section 12022.53, subdivision (c) firearm allegation Alazar did admit " 'does not require [proof] that [he] acted either with the intent to kill or with conscious disregard to life.' " (*Williams*, *supra*, 103 Cal.App.5th at p. 388, review granted; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 598.) But proof of one of these mental states is required to deny a section 1172.6 petition. (See § 188, subd. (a)(1) & (a)(2).) Because Alazar's admission of the firearm enhancement does not supply such proof, it "does not establish [his] ineligibility for resentencing as a matter of law." (*Williams*, at p. 388.)

*Fisher*, *supra*, 95 Cal.App.5th 1022, does not hold otherwise. In that case the petitioner *personally admitted* that he shot and killed two people and shot and injured a third during the plea colloquy. (*Id.* at p. 1025.) Here, Alazar has never

11

admitted he shot Hernandez; during the plea colloquy his counsel stipulated to a factual basis based on *West*, *supra*, 3 Cal.3d 595. A *West* plea does not admit a factual basis for the plea. (*Alvernaz*, *supra*, 2 Cal.4th at p. 932; see also *Rivera*, *supra*, 62 Cal.App.5th at p. 235 [" 'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges' "].)

Finally, we reject the Attorney General's argument that Alazar has never refuted that he was the actual assailant or shown that he was convicted under a natural and probable consequences theory. This argument "turns the section 1172.6 process on its head." (*Williams*, *supra*, 103 Cal.App.5th at p. 404, review granted; see also § 1172.6, subd. (d)(3) [prosecutors bear burden of proof in resentencing hearing].) The section 1172.6 resentencing process " 'begins with the filing of a petition containing a declaration that all requirements for eligibility are met.' " (*Williams*, at p. 404.) "These factual allegations, if true, are sufficient to entitle the petitioner to relief and necessarily 'put[] at issue all elements of the offense under a valid theory.' " (*Ibid.*) "Accordingly, a petitioner who has made the factual allegations required by section 1172.6 is entitled to an order to show cause unless readily ascertainable facts from the record *conclusively establish* the petitioner was convicted under a valid theory." (*Ibid.*, italics added.) The information, plea colloquy, and preliminary hearing transcript here do not provide such conclusive proof.

"Moreover, at the prima facie stage, the trial court relies on the petition and the record of conviction to determine whether a petitioner has stated a prima facie case based on the nature of the offense of which the petitioner was convicted." (*Williams*, *supra*, 103 Cal.App.5th at p. 404, review granted.) "It is not until

12

the evidentiary hearing that section 1172.6 permits the introduction of 'new or additional evidence.' " (*Ibid.*)  "[A] petitioner's bare allegations, phrased in the language of the statute, are sufficient to 'put[] at issue all elements of the offense under a valid theory.' " (*Id.* at p. 405.)

## DISPOSITION

The order denying Alazar's petition for section 1172.6 resentencing, entered June 14, 2023, is reversed, and the matter is remanded to the trial court with directions to issue an order to show cause and hold an evidentiary hearing to determine whether to vacate Alazar's attempted murder conviction, recall his sentence, and resentence him.  (§ 1172.6, subds. (c) & (d).) We express no opinion on the merits of the resentencing petition at that hearing.

<u>CERTIFIED FOR PUBLICATION.</u>


BALTODANO, J.


I concur:


CODY, J.


13

GILBERT, P. J.

I respectfully dissent. In my view this case has nothing to do with *People. v. West* (1970) 3 Cal. 3d 595 and its progeny. I am guided by Penal Code section 1172.6 and its subsections.

Where a defendant pleads no contest to attempted murder, admits that he intentionally discharged a firearm, and is the sole and actual shooter, he is ineligible for resentencing. (*People v. Patton* (2023) 89 Cal.App.5th 649, 657, review granted June 28, 2023, S279670.) It is a defendant's burden to make a prima facie showing to establish resentencing eligibility. Juan Alazar did not meet that burden.

In Alazar's resentencing petition, there is no claim, no offer of proof, or any showing that he did not act alone in committing attempted murder. Alazar had the burden to make a prima facie showing. He did not do so. The prosecutor, relying on the preliminary hearing transcript, said Alazar was the sole and actual shooter. The majority concedes that the "preliminary hearing transcript [is] part of [the] record of conviction." (Maj. opn. *ante*, p. 7; *People v. Reed* (1996) 13 Cal.4th 217, 223.)

Alazar did not deny any of the facts the prosecutor recited from the record. He did not cite to any sworn or unsworn testimony or to any declaration or claim to show there was a factual issue as to whether he acted alone.

The Legislature created a hearing procedure to give defendants the opportunity to make a prima facie showing for resentencing. Where a defendant does not take advantage of that right, as here, a trial court properly denies the petition. The majority concedes that "the trial court *properly considered the record of conviction in making its prima facie determination that Alazar committed attempted murder.*" (Maj. opn. *ante*, at p. 7,

italics added.)  That necessarily undermines the remaining basis for its conclusions.

In another part of its opinion, the majority claims the preliminary hearing transcript is not part of the record of conviction that can be considered.  (Maj. opn. *ante*, p. 9.)  But the California Supreme Court ruled otherwise.  (*People v. Reed*, *supra*, 13 Cal.4th at p. 223.)  The majority also concedes that most California appellate decisions have ruled that facts in a preliminary hearing transcript can be considered in determining whether a defendant has made a prima facie showing for resentencing.  (Maj. opn. *ante*, p. 9; *People v. Mares* (2024) 99 Cal.App.5th 1158; *People v. Pickett* (2023) 93 Cal.App.5th 982; *People v. Patton*, *supra*, 89 Cal.App.5th 649.)

Alazar's petition for resentencing lacks merit.  It should go no further.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  I would affirm the trial court's order denying his petition for resentencing.

<u>CERTIFIED FOR PUBLICATION.</u>



GILBERT, P. J.

David W. Stuart, Judge

Superior Court County of Los Angeles

_____

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.